SEALED

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
NOV 14 2024
CLERK, U.S. DISTRICT COURT
By_____

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. |
| NATHAN REIS (01)<br>STEPHANIE HOCKRIDGE (02)<br>a/k/a STEPHANIE REIS | 4-24CR-287-0 |

## INDICTMENT

The Grand Jury charges:

At all times material to this Indictment:

### Background

1. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program called the Paycheck Protection Program ("PPP").

2. In order to obtain a PPP loan, a qualifying business submitted a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application (Small Business

Indictment - Page 1

Administration ("SBA") Form 2483), the small business (through its authorized representative) was required to provide, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation confirming their payroll expenses.

3. A PPP loan application was processed by a participating lender. While it was the participating lender that funded the loan, the loan was 100 percent guaranteed by the SBA. Data from the loan application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan. In return for processing PPP loans, the SBA paid lenders a processing fee.

4. PPP loan proceeds were required to be used by the business on certain permissible expenses, such as payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time and used a defined portion of the PPP loan proceeds on payroll expenses.

### The Defendants, Related Entities, and Individuals

5. Lender-1 was a Community Development Financial Institution ("CDFI") headquartered in Phoenix, Arizona and a PPP lender.

6. Lender-2 was a CDFI headquartered in Bedford, Texas and a PPP lender.

7. Bank-1 was a financial institution headquartered in Happy, Texas whose deposits were insured by the Federal Deposit Insurance Corporation. Bank-1's computer servers that stored records of bank transactions were located in the Northern District of Texas. In 2021, Bank-1 received funds sent from the Federal Reserve Bank into an account held by Lender-2, which was then disbursed to fund PPP loans.

8. Blueacorn refers to a number of entities that were used by the defendants in 2020 and 2021 to process PPP loans. Beginning in 2021, Blueacorn collected and reviewed PPP loan applications as a lender service provider on behalf of Lender-1 and Lender-2.

9. **Nathan Reis** lived in Arizona and co-founded and co-owned Blueacorn. He sold his ownership interest in 2021. He was also, at times, the Chief Executive Officer of Blueacorn. **Reis** also owned other companies, including Juuice Inc. and Juuice LLC.

10. **Stephanie Hockridge** a.k.a. Stephanie Reis lived in Arizona and co-founded and co-owned Blueacorn. She sold her ownership interest in 2021. She also owned a company called Body Politix LLC. **Hockridge** and **Reis** were married.

11. Michael Cota was a separately charged coconspirator who lived in Arizona and co-owned a company called Qualytics.

12. Vivian Arriaga was a separately charged coconspirator who lived in Arizona and co-owned Qualytics.

13. Coconspirator-1 lived in Arizona and was a business partner of **Reis**, **Hockridge**, Cota, and Arriaga.

14. Coconspirator-2 was an entrepreneur who knew **Reis**.

## Count One
## Conspiracy to Commit Wire Fraud
## (Violation of 18 U.S.C. § 1349 (18 U.S.C. § 1343))

15. Paragraphs 1 through 14 of this indictment are realleged and incorporated.

16. From in or about April 2020, through in or about May 2021, in the Fort Worth Division of the Northern District of Texas and elsewhere, defendants **Nathan Reis** and **Stephanie Hockridge**, along with others known and unknown, did knowingly and willfully combine, conspire, confederate, and agree to commit wire fraud, that is, to devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing the scheme and artifice and attempting to do so, caused to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343.

### Purpose of the Conspiracy

17. The purpose of the conspiracy was for the defendants and their coconspirators to unlawfully enrich themselves by submitting and causing the submission of false and fraudulent applications for forgivable PPP loans.

### Manner and Means of the Conspiracy and Scheme to Defraud

18. The manner and means by which **Reis**, **Hockridge**, and their coconspirators sought to accomplish the object and purpose of the conspiracy included, among other things, the following:

a. Beginning in or around April 2020, **Reis**, **Hockridge**, and their coconspirators began submitting fraudulent applications for PPP loans for themselves and their businesses. **Reis**, **Hockridge**, and their coconspirators fabricated tax documents, doctored bank statements, and made other material misrepresentations in order to deceive lenders and the SBA into issuing loans in amounts for which applicants were not eligible.

b. Beginning in or around April 2020, **Reis**, **Hockridge**, and others founded Blueacorn, purportedly to assist small businesses and individuals in obtaining PPP loans. In order to obtain larger loans for certain PPP applicants, **Reis** and other coconspirators fabricated documents, including payroll records, tax documentation, and bank statements.

c. In 2020, **Reis** and **Hockridge** submitted and facilitated the submission of PPP loan applications through various lenders, including Lender-1. **Reis** and **Hockridge** charged borrowers kickbacks based on a percentage of their loans that were funded, despite knowing that borrowers were prohibited from using PPP loan proceeds to make such payments.

d. Beginning in or around October 2020, **Reis**, **Hockridge**, and others expanded Blueacorn's operations through a lender service provider agreement ("LSPA") with Lender-2. Under the LSPA, Blueacorn collected and reviewed applications from potential borrowers on behalf of Lender-2 and worked with Lender-2 to submit applications to the SBA. In or around

April 2021, Blueacorn entered a similar LSPA with Lender-1. Under these agreements, Blueacorn received a percentage of the fees the SBA paid to Lender-1 and Lender-2 for approved PPP loans. **Reis**, **Hockridge**, and their coconspirators submitted and caused to be submitted PPP loan applications that they knew contained materially false information in order to make more money.

e. **Reis**, **Hockridge**, and their coconspirators also made money through a Blueacorn program called "VIPPP" in which **Hockridge** and others offered a personalized service to help potential borrowers complete PPP loan applications. **Reis** and **Hockridge** recruited coconspirators to work as VIPPP referral agents and coach borrowers on how to submit false PPP loan applications. In exchange for their service, **Reis**, **Hockridge**, and their coconspirators charged VIPPP borrowers kickbacks based on a percentage of their loans that were funded, despite knowing that borrowers were prohibited from using PPP loan proceeds to make such payments. In order to obtain a greater volume of kickbacks from borrowers and fees from the SBA, **Reis**, **Hockridge**, and their coconspirators submitted PPP loan applications that they knew contained materially false information.

19. **Reis**, **Hockridge**, and their coconspirators also took the following steps, among others, to carry out their conspiracy and scheme to defraud:

a. Beginning in or about April 2020, **Reis** created and submitted PPP loan applications at multiple potential lenders containing fabricated tax documents that falsely represented payroll that Juuice Inc. paid employees, including **Reis** and **Hockridge**. The day after one application had been submitted, **Hockridge** sent **Reis** a text message that said, "This is us trying to apply for free money—when we don't quite qualify. lol." Based on their misrepresentations, **Reis** and **Hockridge** obtained a PPP loan of around $69,870 on behalf of Juuice Inc. from one of the lenders.

b. In or about June 2020, **Reis** submitted a materially false PPP loan application on behalf of Juuice LLC. As part of this application, **Reis** fabricated a tax document falsely claiming that Juuice LLC made over $118,000 in profit in 2019. In fact, several months later, **Reis** stated in an email that Juuice LLC did not file taxes in 2019 because "Juuice LLC was not active in 2019." Based on this and other misrepresentations, **Reis** obtained a loan of around $20,832 on behalf of Juuice LLC.

c. In or about June 2020, **Hockridge**, with the help of **Reis**, submitted a materially false PPP loan application for Body Politix LLC ("Body Politix"). The application falsely stated that Body Politix was a software company and had a net profit of $110,470 in 2019. Based on this and other misrepresentations, **Hockridge** obtained a loan of $19,832 on behalf of Body Politix.

d.  In or about February 2021, **Hockridge** submitted a materially false second draw PPP loan application for Body Politix. The application falsely stated that Body Politix experienced a 25 percent reduction in gross receipts between the second quarter of 2019 and the second quarter of 2020, a reduction from $27,618 in 2019 to $17,950 in 2020. Based on this and other misrepresentations, **Hockridge** obtained a loan of around $20,832 on behalf of Body Politix. To fund this loan, Lender-2 received funds into its account at Bank-1, and Bank-1 then transferred the funds electronically using interstate wires to **Hockridge's** bank account, as described in Count Four.

e.  In or about July 2020, **Reis**, Coconspirator-1, and Cota submitted a materially false PPP loan application for Coconspirator-1 as a sole proprietor. As part of the application, Cota doctored a bank statement to misrepresent that Coconspirator-1 had a sole proprietorship apart from the company that Coconspirator-1 owned. **Reis** knew the bank statement was doctored, texting Cota, "Can you send me the routing info and account number for the Statement you're cooking up for [Coconspirator-1]." **Reis** also created a fake tax document purporting to show that a company paid Coconspirator-1 over $106,000 in 2019. This loan was not funded.

f.  In or about August 2020, **Reis** and Cota submitted a materially false PPP loan application for Cota as a sole proprietor. For example, **Reis** created a

fake tax document purporting to show that Cota earned over $100,000 in net profit in 2019. **Reis** and Cota knew that this document was false. Based on this and other misrepresentations, Cota obtained a loan of around $20,800 in his own name.

g. In or about August 2020, **Reis** helped submit a materially false PPP loan application for Vivian Arriaga as a sole proprietor. For example, **Reis** created fake tax documents purporting to show that Arriaga had earned over $87,000 in net profit in 2019. **Reis** and Arriaga knew that these documents were false. Based on this and other misrepresentations, Arriaga obtained a loan of around $18,200 in her own name.

h. In or about August 2020, **Reis** and **Hockridge** helped Coconspirator-2 submit a materially false PPP loan application. Although Coconspirator-2 told **Reis** that Coconspirator-2 did not operate a sole proprietorship, **Reis** told Coconspirator-2 that they would state on the application that Coconspirator-2 would earn $100,000 in 2020. Based on this and other misrepresentations, Coconspirator-2 obtained a loan of around $20,832 in his own name.

i. From in or about January 2021 through in or about March 2021, **Reis** and **Hockridge** helped Coconspirator-2 submit three materially false PPP applications to Lender-2, through which Coconspirator-2 obtained loans totaling over $300,000. In one of the applications, Coconspirator-2 obtained

a loan of over $136,000 for a nonexistent entity. **Reis** sent Coconspirator-2 a template of a payroll report and told Coconspirator-2 to fill it in with the names of Coconspirator-2's friends, knowing that they were not real employees. **Reis** told Coconspirator-2 to falsely claim that each "employee" earned over $100,000.

j.  Similarly, in a second application for a different entity, **Reis** and Coconspirator-2 obtained a loan of over $145,000 by falsely stating that entity had employees.

k.  In a third application, **Reis** and Coconspirator-2 obtained a loan of around $20,832 by falsely stating that Coconspirator-2 had an Amazon business that earned over $100,000 in 2020.

l.  To fund these three loans for Coconspirator-2, Lender-2 received funds into its account at Bank-1, and Bank-1 then transferred the funds electronically using interstate wires to Coconspirator-2's bank account, as described in Counts Two, Three, and Five.

All in violation of 18 U.S.C. § 1349 (18 U.S.C. § 1343).

<u>Counts Two – Five</u>
Wire Fraud
(Violation 18 U.S.C. §§ 1343 and 2)

20. Paragraphs 1-14 of this indictment are realleged and incorporated.

21. On or about the dates set forth below, in the Northern District of Texas and elsewhere, the defendants, **Nathan Reis** and **Stephanie Hockridge**, along with Coconspirator-2 and others known and unknown, aiding and abetting each other, knowingly devised and intended to devise the scheme to defraud described in paragraphs 17 through 19, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme, caused to be transmitted by means of interstate and foreign wire, the communications listed below, each constituting a separate count:

| Count | Date | Description of Wire |
|---|---|---|
| 2 | 2/17/2021 | Bank transaction containing fraudulently acquired PPP funds sent from Bank-1 in the Northern District of Texas to Coconspirator-2 outside the state of Texas |
| 3 | 3/1/2021 | Bank transaction containing fraudulently acquired PPP funds sent from Bank-1 in the Northern District of Texas to Coconspirator-2 outside the state of Texas |
| 4 | 3/3/2021 | Bank transaction containing fraudulently acquired PPP funds sent from Bank-1 in the Northern District of Texas to **Hockridge** outside the state of Texas |
| 5 | 3/10/2021 | Bank transaction containing fraudulently acquired PPP funds sent from Bank-1 in the Northern District of Texas to Coconspirator-2 outside the state of Texas |

All in violation of 18 U.S.C. §§ 1343 and 2.

## Forfeiture Notice
## (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

22. The allegations of this Indictment are hereby realleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendants, **Nathan Reis** and **Stephanie Hockridge**, have an interest.

23. Upon conviction of the offenses in violation of Title 18, United States Code, Sections 1343 and 1349, as alleged in this Indictment, the defendants, **Nathan Reis** and **Stephanie Hockridge**, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.

24. If any of the property described above, as a result of any act or omission of the defendants:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States

Code, Section 2461(c).

All pursuant to 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853, and 28 U.S.C. § 2461(c).

A TRUE BILL.

_____
FOREPERSON

LEIGHA SIMONTON
UNITED STATES ATTORNEY

_____
MATTHEW WEYBRECHT
Assistant United States Attorney
State Bar of Texas No. 24102642
Telephone: 817-252-5200
Fax: 817-252-5455
Email: matthew.weybrecht@usdoj.gov

_____
PHILIP TROUT
Acting Assistant Chief
Fraud Section
U.S. Department of Justice

_____
ELIZABETH CARR
RYAN MCLAREN
Trial Attorneys
Money Laundering and Asset Recovery Section
U.S. Department of Justice

Indictment - Page 13

---

**Warrant to be Issued for Defendant Reis (01); Summons to be Issued for Defendant Hockridge (02)**

_Hal R. Ray, Jr._
UNITED STATES MAGISTRATE JUDGE
No Criminal Matter Pending

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

THE UNITED STATES OF AMERICA

v.

NATHAN REIS (01)
STEPHANIE HOCKRIDGE (02)
a/k/a "Stephanie Reis"

INDICTMENT

18 U.S.C. § 1349 (18 U.S.C. § 1343)
Conspiracy to Commit Wire Fraud
Count 1

18 U.S.C. §§ 1343 and 2
Wire Fraud
Counts 2 – 5

18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))
Forfeiture Notice

A true bill rendered

---

FORT WORTH                                                                                      FOREPERSON

Filed in open court this 14th day of November, 2024.