## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 4:24 CR-00287-O |
| | § | |
| NATHAN REIS and | § | |
| STEPHANIE HOCKRIDGE, a/k/a | § | |
| STEPHANIE REIS, | § | |
| | § | |
| Defendants. | § | |

## DEFENDANT NATHAN REIS'S RENEWED OPPOSED
## MOTION TO DISMISS COUNT ONE OF THE SUPERSEDING INDICTMENT

### INTRODUCTION

On May 8, 2025, the Government obtained a Superseding Indictment that alleged, in a single count, that Defendants Nathan Reis and Stephanie Hockridge engaged in a conspiracy to commit Payment Protection Program ("PPP") fraud.  *See* Superseding Indictment, ECF No. 163 at ¶ 15 (indicating "[t]he purpose of the conspiracy was for the defendants and their coconspirators to unlawfully enrich themselves by submitting and causing the submission of false and fraudulent applications for forgivable PPP loans.").  The Government has insisted that the conduct alleged is that of a single conspiracy even though, as articulated in the Defendants' May 29, 2025, Renewed Joint Motion to Dismiss Count One of the Superseding Indictment (ECF No. 181), there are material differences in the alleged conduct that make grouping it into a single conspiracy improper.

The Government has since made clear at Ms. Hockridge's trial that its omnibus single-count conspiracy distinguishes not at all between separate government-funded loan programs, companies, payment structures, cash flows, and networks of discrete sets of unrelated alleged co-

conspirators.  Lumping such disparate conduct into a single count of conspiracy is a feature, not a bug, of the Government's strategy.  It allows the Government the ability to present the jury wide-ranging and unrelated conduct under the auspices of a single conspiracy, but provides Mr. Reis no opportunity to defend against the conduct and conspiracies in which he had no role—everything is jumbled into a "single conspiracy" to be proven up at trial.  The risk of prejudice from such strategic charging is significant—indeed, the trial of Ms. Hockridge just resulted in a confusing and contradictory jury verdict in which Ms. Hockridge was acquitted of all wire fraud charges brought against her, but yet was still convicted of conspiracy to commit wire fraud.

The Government put this gamesmanship on full display in its press release following Ms. Hockridge's trial, where it triumphantly declared that the jury "convicted Stephanie Hockridge, a founder of the lender service provider Blueacorn, [] in connection with a scheme to fraudulently obtain tens of millions of dollars in COVID-19 relief money[.]" *See* Exhibit A.  Yet the jury did not find evidence of "tens of millions of dollars" of purported fraud—and the Government only identified approximately $130,000 in indicted loan loss.  But more than just engaging in self-promoting, headline seeking behaviour, the Government now seeks to hold Ms. Hockridge liable for more than $65 million in loan loss based on the jury's limited verdict—and indicated it intends to follow the same playbook with Mr. Reis.

The conduct outlined in the Indictment provides one catch-all description that both (1) fails to distinguish between the various and separate conspiracies alleged within Count One, and (2) fails to put Mr. Reis on notice of the nature and cause of the allegations against him. As such, the Indictment's Count One is not only impermissibly vague and duplicitous, but is violative of Mr. Reis's Sixth Amendment and due process rights.  For these reasons, Mr. Reis renews his motion to dismiss in advance of his trial.

2

**DISCUSSION**

I.    **The Superseding Indictment Impermissibly Alleges Multiple Conspiracies and Is Therefore Duplicitous**

"An indictment is duplicitous when two [or more] separate offenses are charged in a single count." *United States v. Sapyta*, 390 F. Supp. 2d 563, 566 (W.D. Tex. 2005) (citation omitted); Fed. R. Crim. P. 12(b)(3)(B)(i). An indictment that combines multiple ***conspiracies*** into one count is likewise duplicitous—and duplicity on a conspiracy charge poses even greater dangers. *See generally Kotteakos v. United States*, 328 U.S. 750, 774 (1946) (explaining that lumping multiple conspiracies into one count violates the requirement for "separate statement[s] in different counts of related but distinct 'acts or transactions of the same class of crimes or offenses'"); *cf. Brooks v. United States*, 164 F.2d 142, 143 (5th Cir. 1947) (holding that a trial "was conducted too much . . . on the assumption that it was immaterial whether the proof showed one conspiracy with which all of the defendants were connected, or separate conspiracies with which some, but not all, of them were") (citation omitted). Here, the core conduct that was charged in the Indictment itself involved allegedly manipulating loans for friends and family, *see* Superseding Indictment ¶ 17, and differs drastically from other alleged conspiracies the Government discussed at Ms. Hockridge's trial, such as the VIPPP program, which served as a referral agent to Blueacorn and had "million-dollar applications" going through it. 6/12 Trial Tr. vol. 2, at 229:14–232:2.

The verdict reached in Ms. Hockridge's trial reflects the jury's confusion from the Indictment's duplicitous conspiracy charge. The jury found that Ms. Hockridge was guilty of a conspiracy to commit wire fraud (Count One), while simultaneously reaching the conclusion that neither she—*nor any other conspirator*—was guilty of committing the underlying wire fraud counts (Counts Two through Five). 6/20 Trial Tr. vol. 7, at 145:11–16; *see also United States v. Caro*, 569 F.2d 411, 418 (5th Cir. 1978) (discussing the "near pervasive use of conspiracy counts"

3

over the years and the "growing habit to indict for conspiracy in lieu of prosecuting for the substantive offense itself") (quoting *Krulewitch v. United States*, 336 U.S. 440, 445–46 (1949)); Jury Charge, ECF No. 222 at 13–15.  Verdicts such as this are vulnerable to appeal under Rule 29 and Rule 33, based on the insufficiency of the evidence.  *See Caro*, 569 F.2d at 418 (instructing that when a jury convicts a "defendant on a conspiracy charge while acquitting on the substantive offense . . . [a] critical analysis of the facts is required when such a contrariety of results [] appear").

The evidence that came out during Ms. Hockridge's trial makes clear that—as noted in Mr. Reis' prior motions—the Indictment's Count One alleges multiple conspiracies, taking place over distinct timeframes and involving different manner, means, participants, and conduct and aims. To cite several, non-exhaustive examples:

1) **Distinct Periods of Time.**    As the Government's witness, Small Business Administration attorney Kandace Zelaya confirmed at trial, there were two separate rounds of PPP funding—one in 2020 and another in 2021.  6/16 Trial Tr. vol. 3, at 248:16–249:9; *see also* 6/12 Trial Tri. vol. 2, at 52:24–53:3.  Those programs were separated by approximately five months in time.  Although both rounds accepted draft documentation and had relaxed fraud detection requirements, the second round of PPP funding in 2021 had distinct rules that further relaxed documentation and underwriting requirements, including from the January 14, 2021, Interim Final Rule ("IFR") and the Economic Aid Act, which loosened the PPP regulation for lenders by expanding the "held harmless" provision to explicitly apply to the borrower's initial loan application; offered further guidance that doubled down on absolving lenders of any liability for PPP fraud provided they acted in good faith; and confirmed that self-employed borrowers could submit draft Schedule C's.  6/16 Trial Tr. vol. 3, at 242:9–243:10; 267:19–269:19; 294:14–295:21; *see also* 6/17 Trial Tr. vol. 5, at 287:24–288:24; 294:3–299:23.

2) **Distinct Businesses and Corporate Entities.** The nature of Mr. Reis and Ms. Hockridge's efforts helping borrowers secure PPP funding fundamentally differed between 2020 and 2021. In 2020, Mr. Reis assisted borrowers with preparing their applications by engaging with them one-on-one, and paying Mr. Reis a personal fee in exchange for his services in preparing the application (through preexisting business entities he owned and operated). *See, e.g.*, 6/12 Trial Tr. vol. 2, at 52:2–52:16 (Jimmy Flores testifying that Michael Cota and Mr. Reis helped him fill out his 2020 PPP loan application); 6/12 Trial Tr. vol. 2, at 58:3–58:8. In contrast, after the first round of PPP funding, Mr. Reis started a new company, FinCap, Inc. ("FinCap," d/b/a Blueacorn), which earned money *from lenders* (rather than primarily collecting fees from the borrowers as Mr. Reis had in Round 1). *See* 6/12 Trial Tr. vol. 2, at 53:7–23; 64:8–12; 69:21–70:15; 230:19–231:24. At this time, Mr. Reis was primarily focused on building networks to promote borrowers' submission of loans through the Blueacorn platform, *not* providing personal consulting to individual borrowers through Juuice. *See, e.g.*, 6/12 Trial Tr. vol. 2, at 305:6–10.

3) **Distinct Alleged "Schemes" Lacking Interdependence.** The multiple conspiracies alleged by the Government are also evident through the multitude of purported co-conspirators who had no involvement or knowledge of each other. As just one example, one of the Government's key cooperating co-conspirator witnesses, Jimmy Flores, testified that he was not a part of the same conspiracy as the other of the Government's key witnesses, Eric Karnezis. 6/12 Trial Tr. vol. 2, at 283:24–284:1. ("Q: What do you know about Eric Karnezis? A [Flores]: Not much. Q: So he's not listed as one of your co-conspirators, right? A: No. Q: You didn't enter into any conspiracy with Eric Karnezis? A: Not that I know of."). In its Superseding Indictment, the Government failed to demonstrate any interdependence among the borrowers that could establish that all of the separate allegations contained in a single Count made up one single

Case 4:24-cr-00287-O    Document 248    Filed 07/16/25    Page 6 of 12    PageID 5273

conspiracy. *Cf. Kotteakos*, 328 U.S. at 754–55 ("[T]here were 'at least eight, and perhaps more, separate and independent groups, none of which had any connection with any other, though all dealt independently with [a common] agent.' . . . The proof therefore admittedly made out a case, not of a single conspiracy, but of several, notwithstanding only one was charged in the indictment.").

4) **Distinct Conduct and Aims.** There were significant differences in the number and size of the loans in the various conspiracies contained within Count One. During Round 1 of the PPP, which lasted from April to August 2020, Mr. Reis is alleged to have worked directly with borrowers to assist them in preparing loan applications that contained false information. *See* Superseding Indictment ¶¶ 17(e)–(f). The Government has charged only a few allegedly fraudulent loans stemming from this round of PPP funding. *Id.* ¶¶ 17(a)–(c), (e)–(f), (i). By contrast, during Round 2 of the PPP, running from January to May 2021, the VIPPP program and its referral network, which did not exist in Round 1 (and was not operated by Mr. Reis), consulted on over $100 million in loans, $65 million of which the Government now seeks to attribute to Ms. Hockridge—and has indicated it seeks to pursue against Mr. Reis as well. *See* 6/20 Trial Tr. vol. 7, at 165:16–166:9. This is despite the fact that the total amount of allegedly fraudulent loans identified in the Indictment amounts to less than $500,000.[1]

Although the jury found Ms. Hockridge guilty of a conspiracy that involved approximately $130,000 of loans identified in the Indictment, following the jury's verdict, the Government promptly issued a press release titled "Founder of Lender Service Provider Convicted in Role in Multimillion-Dollar PPP Fraud Scheme." The release purported that the jury "convicted Stephanie

---

[1] The alleged loss from the four wire fraud counts is $324,161 (Superseding Indictment ¶¶ 17(d), (g)–(i)) and the alleged loss for the five other loans referenced in the Indictment as part of the conspiracy is $131,366 (*id.* ¶¶ 17(a)–(c), (e), (f)).

Hockridge, a founder of the lender service provider Blueacorn, in connection with a scheme to fraudulently obtain tens of millions of dollars in COVID-19 relief money." *See* Exhibit A. The jury did not find (because it was not asked to find) "tens of millions of dollars" of purported fraud; the conspiracy count for which the jury returned a guilty verdict concerned a handful of loans for herself, her husband, and two friends. And it explicitly indicated that the trial was not about Blueacorn. Indeed, the Government explicitly stressed the narrow nature of the case it was presenting to the jury in Ms. Hockridge's trial, including explaining to the jury that Ms. Hockridge was not on trial for conduct related to Blueacorn (despite repeated references throughout the Superseding Indictment), but rather for loans referred through VIPPP. 6/12 Trial Tr. vol. 2, at 18:12–18 ("Now in 2021, Blueacorn had applications coming in, in two ways. So there were applications coming in through a public website, a portal. And those applications are not the focus of this case. The focus of this case is VIPPP, a personalized loan service that accepted applications coming in through referrals to Ms. Hockridge and her team."); *see also* Superseding Indictment ¶ 16(b)–(e). For the Government to represent otherwise is nothing more than a shameless attempt to not only grab headlines—but more perniciously, to contort the simple case it indicted, involving under half a million dollars in loans—into a record-breaking corporate conspiracy case to be tried at sentencing.

## II.    COUNT ONE OF THE SUPERSEDING INDICTMENT FAILS TO PROVIDE ADEQUATE NOTICE AND IS UNCONSTITUTIONALLY VAGUE

A duplicitous indictment compromises a defendant's Sixth Amendment right to know the charges against him. *United States v. Hinton*, 127 F. Supp. 2d 548, 553 (D.N.J. 2000). Duplicitous indictments risk injecting ambiguity into a jury's verdict, posing the danger of a nonunanimous verdict. A general verdict against a defendant on one count that contains more than one crime "does not reveal whether the jury found him not guilty of one crime[,] or not guilty of both"; as a result, the verdict will not show whether the jury was unanimous as to two crimes contained in the single count. *United States v. Starks*, 515 F.2d 112, 116 (3d Cir. 1975). The practical implication of such a defect in an indictment is that it opens the door for the prosecution to prove conduct related to separate conspiracies by a "preponderance of the evidence" standard at sentencing, robbing the defendant of the opportunity to argue his defense to those separate conspiracies and be convicted by a jury of his peers beyond a reasonable doubt. Indeed, the exact problem has already infected Ms. Hockridge's case—given her acquittal on each of the substantive counts, if the jury unanimously found Ms. Hockridge guilty of any course of conduct at all, it was not the unified course of conduct alleged in the Superseding Indictment.[2]

The Sixth Amendment guarantees criminal defendants the right to "be informed of the nature and cause of the accusation" against them. U.S. CONST. amend. VI. "No principle of procedural due process is more clearly established than that notice of the specific charge[s]" brought against an individual. *Cole v. Arkansas*, 333 U.S. 196, 201 (1948). Charges are "sufficiently specific when [they] contain[] the elements of the crime, permit[] the accused to plead

---

[2] For example, as far as the jury's verdict tells, Ms. Hockridge might have been believed by half of the jurors to have conspired with Mr. Flores in 2020 and by the other half to have conspired with Mr. Karnezis in 2021—but without unanimity as to which conspiracy Ms. Hockridge was actually a part of.

and prepare a defense, and allow[] the disposition to be used as a bar in a subsequent prosecution." *Fawcett v. Bablitch*, 962 F.2d 617, 618 (7th Cir. 1992); *see also United States v. Hillie*, 227 F. Supp. 3d 57, 71–73 (D.D. C. 2017) (determining that an indictment was impermissibly vague when it provided a "verbatim recitation of the broad and varied statutory elements of the offenses that are charged against [the defendant]"; was "barren of factual averments regarding the what, where, or how of [the defendant's] conduct;" and did not make it clear whether each separate count "even reference[d] different acts on the Defendant's part"). *Cf. United States v. Am. Waste Fibers Co., Inc.*, 809 F.2d 1044, 1046 (4th Cir. 1987) (determining that an indictment was not unconstitutionally vague when it alerted the defendant to the "elements of the offenses by following the language of the statute and listing nine overt acts together with locations and dates").

In order to satisfy the Sixth Amendment, indictments must: "(1) enumerate each *prima facie* element of the charged offense; (2) fairly inform the defendant of the charges filed against him; and (3) provide the defendant with a double jeopardy defense against future prosecutions." *United States v. Gaytan*, 74 F.3d 545, 551 (5th Cir. 1996); *see also United States v. Conlon*, 628 F.2d 150, 155 (D.D.C. 1980) (stating that indictments must "be supplemented with enough detail to apprise the accused of the *particular* offense with which he is charged"). For example, the state of Texas has determined that indictments that simply "track[] the statutory language," without "alleging the manner or means" of the charge, provide insufficient notice. *State v. Edmond*, 933 S.W.2d 120, 129 (Tex. Crim. App. 1996).

For the reasons stated in Section I, the Government's Superseding Indictment fails to provide sufficient detail as to the claims it levies against Mr. Reis. Accordingly, it denies Mr. Reis a meaningful opportunity to contest the allegations asserted against him. As such, the

impermissibly vague Superseding Indictment deprives Mr. Reis of his Sixth Amendment and due process rights.

**CONCLUSION**

This Court must dismiss Count One of the Indictment. The outcome of Ms. Hockridge's trial reflects that it not only risks confusing the jury, but in fact did confuse the jury. The Government gravely erred (twice) by charging more than one conspiracy in Count One, which led to a contradictory verdict in Ms. Hockridge's trial that requires "judicial skepticism." *Caro*, 569 F.2d at 413. To allow the Government to continue this charging gamesmanship in Mr. Reis's trial risks another contradictory or nonunanimous verdict vulnerable to appeal, the improper transference of guilt across at least two distinct conspiracies, and deprivation of Mr. Reis's opportunity to present evidence concerning the disparate conspiracies to a jury.

As a result, the duplicitous Superseding Indictment warrants dismissing the offending Count, thereby requiring the Government to either obtain a new indictment with the multiple offenses charged separately, or go to trial on the remaining counts of the Superseding Indictment. *See Sapyta*, 390 F. Supp. 2d at 566–67; *United States v. Gunselman*, 643 F. App'x 348, 353 (5th Cir. 2016); *Starks*, 515 F.2d at 118; *Hinton*, 127 F. Supp. 2d at 554. No remedy short of dismissal will be adequate to protect Mr. Reis from the unfair prejudice, deprivation of due process, and deprivation of the right to a fair trial inherent in being tried on the duplicitous and unconstitutionally vague Count One.

Dated: July 16, 2025

Respectfully submitted,

LATHAM & WATKINS LLP

/s/ *Kevin Andrew Chambers*
Kevin Andrew Chambers (*Pro Hac Vice*)
DC Bar No. 495126
Michael Clemente (*Pro Hac Vice* pending)

DC Bar No. 1708793
555 11th Street NW, Suite 1000
Washington, DC 20004
Tel: (202) 637-2200
Fax: (202) 637-2201
*kevin.chambers@lw.com*
*michael.clemente@lw.com*

Matthew S. Salerno (*Pro Hac Vice*)
1271 Avenue of the Americas
New York, NY 10020
Tel: (212) 906-1200
Fax: (212) 751-4864
*matthew.salerno@lw.com*

Michael P. Heiskell, TX Bar: 09383700
JOHNSON, VAUGH & HESKELL
5601 Bridge Street, Suite 220
Fort Worth, Texas 76112
Tel: (817) 457-2999
Fax: (817) 496-1102
*mheiskell@johnson-vaughn-heiskell.com*

*Attorneys for Defendant Nathan Reis*

11

## CERTIFICATE OF CONFERENCE

I hereby certify that I conferred with AUSA Philip Trout via email on July 15, 2025, who

indicated that the Government opposed the Defendant being granted the relief requested herein.


Dated: July 16, 2025                                    */s/ Matthew S. Salerno*
                                                        Matthew S. Salerno

## CERTIFICATE OF SERVICE

I hereby certify that on this July 16, 2025, a true and correct copy of the foregoing

document was served on all counsel of record by operation of the Court's CM/ECF system.


Dated: July 16, 2025                                    */s/ Kevin Andrew Chambers*
                                                        Kevin Andrew Chambers

12