**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 4:24 CR-00287-O |
| | § | |
| STEPHANIE HOCKRIDGE, a/k/a | § | (02) |
| STEPHANIE REIS, | § | |
| | § | |
| Defendant. | § | |

### DEFENDANT STEPHANIE HOCKRIDGE'S MOTION FOR NEW TRIAL

COMES NOW Defendant Stephanie Hockridge, by and through the undersigned counsel, and, under Federal Rule of Criminal Procedure 33, moves for a new trial on Count One of the Superseding Indictment. In support of the Motion, and as explained more fully in the contemporaneously filed memorandum of law in support, Ms. Hockridge respectfully states:

1. In contrast to a motion for judgment of acquittal under Federal Rule of Criminal Procedure 29, a motion under Rule 33 "'goes to the fairness of the trial rather than to the question of guilt or innocence.'" *United States v. McRae*, 795 F.3d 471, 481 (5th Cir. 2015) (citations omitted). Accordingly, "if a trial court concludes for ***any reason*** that the trial has resulted in a miscarriage of justice," Rule 33 vests "the court [with] broad powers to grant a new trial." *United States v. Bowen*, 969 F. Supp. 2d 546, 574 (E.D. La. 2013) (emphasis added), *aff'd*, 799 F.3d 336 (5th Cir. 2015).

2. "Rule 33 is exercised in two situations. One is when error infects the trial—perhaps the erroneous admission or exclusion of evidence, inflammatory comments by a lawyer, or faulty jury instructions. The other is when the court believes the evidence 'weighs heavily against the verdict.'" *United States v. Crittenden*, 46 F.4th 292, 296 (5th Cir. 2022).

1

3.      Here, both situations contemplated by the Fifth Circuit independently warrant a new trial for Ms. Hockridge. As explained further below and in Ms. Hockridge's contemporaneously filed memorandum in support of her motion, those circumstances include unconstitutional and improper conduct by the Government both before and during Ms. Hockridge's trial; the Government's last-minute pivot to a deliberate ignorance theory at the end of its case-in-chief; the Court's decision not to provide several theory-of-defense instructions that would have addressed the apparent confusion reflected by the jury's inconsistent verdict; the improper admission of inadmissible evidence over Ms. Hockridge's objection; and the wrongful exclusion of admissible evidence that would have undermined a finding of guilt on the sole count of conviction, including the initial exclusion of evidence of Ms. Hockridge's communications with Eric Karnezis prior to and during his cross-examination, which had the effect of depriving Ms. Hockridge of her rights under the Confrontation Clause of the Sixth Amendment.

### GROUNDS FOR RELIEF

4.      As Ms. Hockridge has further explained in her Motion for Judgment of Acquittal and supporting memorandum, the Government failed to present evidence that, even drawing reasonable inferences in its favor, was sufficient to persuade a rational factfinder ***beyond a reasonable doubt*** of her knowing participation in the conspiracy charged in the Superseding Indictment. But under Rule 33, the Court is not required to draw any inferences in the Government's favor; instead, it looks to the record as a whole, asking if the evidence weighs heavily enough in the defendant's favor that a new trial is "in the interest of justice." *Crittenden*, 46 F.4th at 296.

5.      That standard is readily satisfied here. *See* Mem. in Supp. § I. The evidence at trial suggesting Ms. Hockridge's knowledge of material falsity of any borrower applications at the time

of their submission (rather than after-the-fact) was so sparse as to be incapable of persuading a rational factfinder ***beyond a reasonable doubt*** that she had knowingly joined the conspiracy alleged by the Government. Such a conclusion was also contradicted by the substantial evidence of Ms. Hockridge's considerable efforts to ***detect and reject*** fraudulent applications, including the extensive record of written communications with the Government's star witness, Eric Karnezis, that directly contradicted his attempts to implicate Ms. Hockridge in his wrongdoing.

6.     The Government further failed to establish that the vast majority of the applications it introduced contained false statements, let alone material ones. As Special Agent Hagerman admitted under cross-examination, the Government did not take the ordinary step of obtaining bank records for most of the borrowers whose applications the Government claimed were fraudulent, thereby failing to establish ***beyond a reasonable doubt*** that any changes to their loan applications constituted false statements. And especially given that the Government's own witness acknowledged under oath that the Small Business Administration did not even ***look at*** borrower applications to determine whether or not to approve the issuance of any loans, the Government did not present evidence that any misstatements in borrower applications were material to the lending decision. And even where the Government did present some evidence of falsehoods in borrower applications, it altogether failed to present evidence that Ms. Hockridge ***knew*** that any such statements were false at the time the applications were submitted.

7.     The Government also failed to present evidence from which a jury could rationally infer that a coconspirator committed an act in furtherance of the conspiracy while present in the Northern District of Texas. Although the Government belatedly acknowledged, the morning of closing arguments, that venue was only proper if ***a coconspirator*** committed an act within this judicial district in furtherance of the conspiracy, it failed to present evidence to establish venue

here. The Government's new theory, which it has evidently developed post-trial, that venue can be established by a coconspirator's causing an *effect* in the district has no support in the law of the Fifth Circuit and would be contrary to the language of the Sixth Amendment itself, which requires venue to be placed in the "district wherein the *crime* shall have been committed." U.S. Const. amend VI.

### *Witness Interference*

8.     Ms. Hockridge intended to call Christabel Warzel as a witness in her defense. Ms. Warzel was a state prosecutor whom Ms. Hockridge hired to assist with loan processing, and whom Ms. Hockridge instructed to be on the lookout for potential fraudulent applications. Had she testified, Ms. Warzel would have informed the jury of the specific steps she took to carry out Ms. Hockridge's instructions and supported Ms. Hockridge's defense that she had acted in good faith with respect to the loan applications that passed through VIPPP.

9.     As explained further in the accompanying memorandum, *see* Mem. in Supp. § II-A, Ms. Warzel voluntarily met with the Government on the night of June 16, 2025. No fewer than six Government representatives met with Ms. Warzel, showed her documents that she had never seen before, and pressed her for her legal opinion as to whether Ms. Warzel would prosecute a case based on the evidence presented to her during the meeting. There is no other plausible explanation for why the Government would confront Ms. Warzel with such documents other than dissuade her from offering favorable testimony in Ms. Hockridge's case.

10.     When Ms. Warzel's attorney asked for clarification about the Government's belief as to Ms. Warzel's potential culpability, the Government told Ms. Warzel that she was "not off the hook," and that she was closer to a "target" than a "witness." The Government further suggested

that Ms. Warzel's testimony on behalf of Ms. Hockridge could lead to potential liability for Ms. Warzel.

11.     "Substantial government interference with a defense witness' free and unhampered choice to testify violates due process." *United States v. Anderson*, 755 F.3d 782, 792 (5th Cir. 2014) (citation omitted). Here, the Government's apparent efforts to intimidate Ms. Warzel on the eve of her anticipated testimony violated Ms. Hockridge's due process rights.

### *False Non-Target Assurance*

12.     Prior to trial, Ms. Hockridge filed a motion for a hearing regarding the Government's false assurance to her during its investigation that she was not a target of the Government's investigation. The Court reserved ruling on the motion until after trial. *See* Order (Doc. #137) at 2–3. Based on the evidence adduced at trial regarding that issue (and other evidence that Ms. Hockridge hopes to adduce at a hearing), the Government's false assurance to her and its subsequent use of statements she voluntarily made in reliance upon that false assurance, at the very least merits a new trial, if not an outright dismissal with prejudice.[1] Mem. in Supp. § II-B,

13.     Ms. Hockridge voluntarily sat for a proffer interview with the Government on March 21, 2023, pursuant to an assurance, provided both to her counsel prior to the interview and to Ms. Hockridge at the outset of the interview itself, that she was not a target of the Government's investigation. But, at trial, Special Agent Colin Friedemann acknowledged that he had: (1) written a memorandum in the month prior, in which he described Ms. Hockridge as a "target," 6/13/25 Tr. 96:23–97:15; and (2) the ***day before*** the proffer, sworn out a warrant affidavit in which he accused Ms. Hockridge of having committed federal crimes, 6/13/25 Tr. 98:19–25. Indeed, Special Agent

---

[1] Ms. Hockridge has contemporaneously filed a motion renewing her request for an evidentiary hearing on this particular issue.

Friedeman testified that Ms. Hockridge became a focus of the Government's investigation as early as 2022, when Devin Hochberg approached the Government. 6/13/25 Tr. 90:22–91:22.

14.    At trial, the Government successfully used Ms. Hockridge's statements during her proffer interview to preclude her from arguing that the Government had failed to present evidence that she signed the 2020 Body Politix loan application. *See* 6/18/25 Tr. 40:13–41:4, 167:20–18, 171:12–19, 162:23–163:8, 172:20–76:12; 6/20/25 Tr. 82:18–24.

15.    This Court has broad discretion to craft an appropriate remedy for prosecutorial misconduct through a false non-target assurance. *See United States v. Gillespie*, 974 F.2d 796, 801–02 (7th Cir. 1992). At a minimum, a new trial—in which the Government would be precluded from using Ms. Hockridge's proffer statements, and any fruits of the investigation resulting from Ms. Hockridge's proffer interview, against her—is necessary to remedy the false non-target assurance.

### Last-Minute Shift to Deliberate Ignorance Theory

16.    Over Ms. Hockridge's objection, the Court provided the jury a "deliberate ignorance" instruction, which the Government requested at the close of its case-in-chief, in an abrupt departure from its longstanding theory that Ms. Hockridge had **actual knowledge** of the alleged fraud. *See* Mem. in Supp. § III. That improper instruction merits a new trial, for several reasons:

- *First*, as the Fifth Circuit has explicitly held, a "deliberate ignorance" instruction cannot issue where, as here, the Government has alleged that a defendant had **actual knowledge** of the alleged falsehoods. *See United States v. Oti*, 872 F.3d 678, 697–98 (5th Cir. 2017) ("Where the Government relies on evidence of actual knowledge, the deliberate ignorance instruction is not appropriate.").

- *Second*, the trial evidence failed to establish that Ms. Hockridge purposefully contrived to avoid learning about illegal conduct, and the deliberate ignorance instruction sowed confusion among the jurors regarding the Government's burden of proof.

6

- *Third*, allowing the Government to shift its theory from actual knowledge to deliberate ignorance, mid-trial, constituted a constructive amendment of (or fatal variance from) the Superseding Indictment.

### *Failure to Provide Requested Theory-of-Defense Instructions*

17.    The jury convicted Ms. Hockridge of conspiracy, but it acquitted her on four counts that the Government alleged were part of the same conspiracy. There is only one reasonable explanation for the inconsistent verdict: the jury did not understand the law of conspiracy.

18.    Before trial, Ms. Hockridge requested several instructions that the Court omitted from its jury charge. Each of the omitted instructions were correct statements of the law, would have mitigated the risk of juror confusion, and likely would have resulted in an acquittal. *See* Mem. in Supp. § IV.

19.    Those instructions included (1) an instruction that mere knowledge, mere association, mere marriage, and mere similarity are not sufficient to establish proof of the existence of a conspiracy, or a defendant's participation in a conspiracy; (2) an instruction on the law of multiple conspiracies, and the government's burden of proof to establish that Ms. Hockridge knowingly joined a specific conspiracy, such that she would not be impermissibly convicted based on mere transference of guilt; (3) instructions that the jury should not speculate as to the contents of any spousal communications and that it not draw an inference against Ms. Hockridge simply because Mr. Reis did not testify at trial; (4) instructions concerning Ms. Hockridge's reasonable reliance on SBA guidance and borrower certifications; and (5) an instruction on venue that correctly required the jury to find that an overt act must have been committed **by a coconspirator** within the district before it could convict her of conspiracy.

20.    Because the Court's decision not to give the requested instructions materially impaired her ability to present a defense, Ms. Hockridge is entitled to a new trial.

### *Evidentiary Rulings Resulting in an Unfair Trial*

21.     The Court also improperly admitted, over Ms. Hockridge's objection, statements that should not have been admitted because (1) the Government failed to establish that the statements satisfied the requirements for the admission of coconspirator statements under Federal Rule of Evidence 801(d)(2)(E) and/or (2) the statements were confidential marital communications protected by the spousal communications privilege, which, contrary to the Court's pretrial ruling, is a distinct protection from the spousal testimonial privilege. *See* Mem. in Supp. § V-A.

22.     With respect to the purported coconspirator statements, the lion's share of the evidence offered against Ms. Hockridge constituted hearsay that did not satisfy the requirements for admission under Federal Rule of Evidence 801(d)(2)(E). Many of the statements were admitted even though they did not meaningfully advance the particular conspiracy they purportedly supported. Additionally, numerous such statements that plainly did not further any conspiracy were admitted into evidence.

23.     With respect to the admitted spousal communications, the Government introduced numerous private communications between Ms. Hockridge and her husband Mr. Reis based upon the Court's pretrial ruling that the spousal communications privilege applied only to in-court testimony, not to out-of-court marital communications. Order (Doc. #137) at 5.  The admission of such evidence was contrary to the well-settled precedent that written "marital communications are 'presumptively confidential," extending the communications privilege to out-of-court statements by either spouse. *United States v. Livingston*, 272 F. App'x 315, 316 (5th Cir. 2008) (citation omitted).

24.     Finally, the Court's belated admission of certain evidence that supported her contention that she had acted in good faith with respect to her administration of VIPPP deprived

Ms. Hockridge of a fair trial. *See* Mem. in Supp. § V-B. Ms. Hockridge sought—from the outset of trial—to introduce evidence of her ongoing efforts to detect and reject fraudulent loan applications. She was denied that opportunity.

25.     On the fifth—and last—day of the Government's case-in-chief, the Court reversed its prior exclusionary ruling and allowed Ms. Hockridge to introduce a limited number of exculpatory statements that directly rebutted the self-serving testimony of the Government's principal witness, Eric Karnezis. The Court, however, rejected Ms. Hockridge's request to introduce additional, materially exculpatory evidence. That error deprived Ms. Hockridge of her right to mount an effective defense. More problematically, by belatedly admitting the few statements related to Eric Karnezis, the Court deprived Ms. Hockridge of the ability to effectively confront Karnezis when he was on the stand, in violation of her Sixth Amendment rights.

### REQUEST FOR RELIEF

26.     Although Ms. Hockridge recognizes that it is uncommon for a court to grant a new trial after a guilty verdict in a criminal case, the unique circumstances of Ms. Hockridge's case cry out for relief. Any of the circumstances described above and in the accompanying memorandum would have been sufficient on their own to justify a new trial; taken together, they necessitate one. Allowing Ms. Hockridge's conviction to stand on the sole count of the Superseding Indictment upon which the jury returned a guilty verdict, when so many circumstances call into serious question the fairness of her trial, would work a fundamental miscarriage of justice. Ms. Hockridge therefore respectfully requests that the Court grant her a new trial.

WHEREFORE Defendant Stephanie Hockridge prays that the Court grant her Motion for a New Trial on Count One of the Superseding Indictment and grant such other and further relief as the Court deems just and proper.

Dated: July 28, 2025

Respectfully submitted,

BRYAN CAVE LEIGHTON PAISNER LLP

*/s/ Richard E. Finneran*
RICHARD E. FINNERAN
MARK A. SRERE
KEVIN H. JENCO
211 North Broadway, Suite 3600
St. Louis, Missouri 63102
Tel: (314) 259-2000
Fax: (314) 259-2020
*richard.finneran@bclplaw.com*
*mark.srere@bclplaw.com*
*kevin.jenco@bclplaw.com*

*Attorneys for Defendant Stephanie Hockridge*

## CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2025, a true and correct copy of the foregoing document was served on all counsel of record by operation of the Court's CM/ECF system.

*/s/ Richard E. Finneran*
RICHARD E. FINNERAN